Submitted on record and briefs November 5, 1997, affirmed November 18, 1998

CRAIG NORMAN BEISWENGER,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

(88-1003; CA A94270)

970 P2d 229

Harris S. Matarazzo filed the brief for petitioner.

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Jas. Adams, Assistant Attorney General, filed the brief for respondent.

Before Riggs, Presiding Judge pro tempore, and Landau and Wollheim,* Judges.

LANDAU, J.

---

* Wollheim, J., *vice* Leeson, J., resigned.

**LANDAU, J.**

Petitioner seeks review of an order of the Psychiatric Security Review Board (PSRB) denying his request for unconditional discharge. He argues that PSRB erred in finding that he presents a substantial danger to others. We conclude that substantial evidence supports PSRB's finding and affirm.

In 1988, petitioner grabbed a woman by the wrists and held a knife to her throat as he ordered her to come with him. He threatened to kill her if she refused. As petitioner led the woman to his car, she struggled free and escaped. Petitioner was arrested and charged with kidnaping. He admitted threatening the woman and explained that he did so because she laughed at him. Petitioner was found guilty but for insanity and was placed under the jurisdiction of PSRB. In 1989, he was conditionally released, but within a short time PSRB revoked the release when petitioner attempted to choke a member of his family.

Since the resumption of his commitment, petitioner has been an inmate at the Oregon State Hospital. He was diagnosed with paranoid schizophrenia. In 1991, petitioner was taken off his medication, because he no longer showed any overt symptoms of schizophrenia. He was approved for release on the condition that he receive sex offender treatment, but he refused the treatment. In 1992, petitioner was diagnosed with paraphilia, substance abuse, and a schizoid personality disorder. In 1994, petitioner again was recommended for release on the condition that he receive sex offender treatment, and again he refused such treatment.

In 1996, petitioner requested discharge, contending that he no longer presented a danger to others. Petitioner's treating psychiatrist, Dr. Ruiz-Martinez, diagnosed petitioner as suffering from paraphilia, not otherwise specified; schizoid personality disorder; and headaches. When asked whether petitioner would pose a danger to others if unsupervised, she replied that she could not form an opinion without a sex offender evaluation, which had not been performed. When asked if she trusted petitioner not to use drugs if living in the community, she stated that she would not trust him.

Dr. Schwartz, a psychiatrist who had worked on petitioner's ward for several months, testified that petitioner's behavior generally had been good, but that he "would be more comfortable if [petitioner] were under supervision for some time out of the hospital if he were released" to verify what Schwartz characterized as "the safety issue." When asked if he believed that petitioner would pose a danger to others if released unsupervised, Schwartz responded, "based on the record, that's a possibility." PSRB continued the hearing to obtain more information about petitioner's condition.

Petitioner underwent sex offender evaluation, conducted by Drs. Farrenkopf and Wollert. When the hearing reconvened, Wollert testified on the basis of the evaluation that the rigidity of petitioner's belief systems made it difficult for petitioner to accept his own negative impulses and behaviors, that petitioner blocked a great deal of anger, and that he "may displace his anger onto those who are less powerful than himself" in unsupervised situations. Wollert further concluded that people with profiles similar to petitioner "may behave aggressively at infrequent intervals when unanticipated events disrupt their overcontrolled interpersonal style." He concluded that the evidence did not suggest that petitioner was a dangerous or compulsive sex offender, but that petitioner was "at some risk of misconducting himself" and that "the interests of the community would best be served by careful planning and monitoring" of petitioner.

Ruiz-Martinez again testified and, based on Wollert's evaluation, agreed that petitioner was not sexually dangerous, but that he nevertheless would need continued treatment in the community if released.

PSRB denied petitioner's request for discharge, but issued an order granting him a conditional release. PSRB found that petitioner,

"without adequate supervision and treatment, would continue to present a substantial danger to others as demonstrated by the underlying facts shown by the evidence, including the expert testimony of Luvy Ruiz-Martinez, M.D., at the hearing, as well as the circumstances surrounding the crimes for which he was placed in the jurisdiction of [PSRB] * * *."

PSRB concluded that, although petitioner was suitable for conditional release, there were no adequate sources of supervision or treatment for him in the community. PSRB therefore ordered:

> "[P]ursuant to ORS 161.346(1)(b), that [petitioner] be committed to a state hospital designated by the Mental Health Division for care, custody and treatment pending the availability of a plan with the supervision and treatment necessary for his conditional release."

On review, petitioner does not contest that he suffers from a mental disease or defect. His sole contention is that PSRB erred in finding that he presents a substantial danger to others. He notes particularly that neither Ruiz-Martinez nor Wollert affirmatively stated that he would pose a substantial danger to others if released unsupervised. PSRB responds by conceding that it must discharge an individual in the absence of expert testimony that the individual's mental disease or defect, when active, will, with reasonable medical certainty, render the individual dangerous to others. In support of the point, PSRB refers to *Rolfe v. PSRB*, 53 Or App 941, 633 P2d 846, *rev den* 292 Or 334 (1981), and *Cochenour v. PSRB,* 47 Or App 1097, 615 P2d 1155 (1980). PSRB nevertheless contends that, on the record in this case, its findings as to petitioner's dangerousness to others are supported by substantial evidence. We agree with PSRB's conclusion, although not with its reasoning.

A person who has been committed to a state hospital may apply to PSRB for discharge or conditional release upon one of three grounds:

> "(a)   That the person is no longer affected by a mental disease or defect;

> "(b)   If so affected, that the person no longer presents a substantial danger to others; or

> "(c)   That the person continues to be affected by a mental disease or defect and would continue to be a danger to others without treatment, but that the person can be adequately controlled and given proper care and treatment if placed on conditional release."

ORS 161.341(4). PSRB is required to hold hearings upon an application for discharge. ORS 161.346(1). If, after hearing, PSRB finds that the person is no longer affected by a mental disease or defect, or if it finds that the person continues to be so affected but no longer presents a substantial danger to others, PSRB must order the person discharged. ORS 161.346(1)(a). If PSRB finds that the person is still affected by a mental disease or defect and is a substantial danger to others, but can be controlled adequately with treatment as a condition of release, PSRB must order the person conditionally released. ORS 161.346(1)(b). If PSRB finds that a person is affected by a mental disease or defect in remission that may "with reasonable medical probability" become active and that may, when active, render the person dangerous to others, the person may not be discharged, but may be conditionally released. ORS 161.351(2).

*Rolfe* and *Cochenour* involved individuals with mental diseases or defects in remission, thus triggering ORS 161.351(2). We held that the "reasonable medical probability" language used in the statute requires expert testimony that, with reasonable medical probability, an individual's condition could become active and render him or her dangerous. *Rolfe*, 53 Or App at 948; *Cochenour*, 47 Or App at 1106.

■    In this case, petitioner's condition is not in remission, and ORS 161.351(2) does not apply. Neither, therefore, does *Rolfe* nor *Cochenour*. The case instead arises under ORS 161.346(1), which makes no textual reference to the necessity of relying on expert medical testimony as to any particular conclusion. *See Drew v. PSRB*, 322 Or 491, 499, 909 P2d 1211 (1996) (evidence other than expert medical testimony may suffice to support PSRB's finding of dangerousness).

■■    The issue, then, is whether PSRB erred in finding that petitioner would pose a substantial danger to others if unconditionally released. We review that finding for substantial evidence. *Drew*, 322 Or at 498-99. Substantial evidence is "any reasonable evidence or such proof as a reasonable person would employ to support a conclusion." *Cook v. Employment Division*, 47 Or App 437, 441, 614 P2d 1193 (1980).

In this case, each of the medical professionals who testified stated that petitioner required continued supervision and treatment if released, to address "safety" issues arising out of his continued difficulties in dealing with substantial negative impulses and anger. They testified that, although perhaps he no longer may be regarded as a dangerous *sex offender*, still he should be released only subject to supervision and treatment.

We conclude that PSRB did not err in finding that petitioner posed a substantial danger to others if unconditionally released.

Affirmed.